UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JOHNATHAN BULLUCK,

Defendant.

MEMORANDUM
OPINION & ORDER

09 Cr. 652 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

A jury convicted Defendant Johnathan Bulluck of possessing a controlled substance – cocaine base – with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). Bulluck has moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a) and (c),[1] arguing that the Government failed to prove beyond a reasonable doubt that he knowingly possessed a controlled substance. (Def. Br. 8) For the reasons stated below, the motion for a judgment of acquittal will be denied.

## BACKGROUND

### I. THE EVIDENCE AT TRIAL[2]

Yonkers police officers Dominic Robinson and Kenneth Doyle are assigned to an anti-crime unit, and patrol in an unmarked vehicle and in plainclothes. On November 8, 2008, at approximately 11:45 p.m., the officers stopped a livery cab at the

---

[1] Bulluck moved for a judgment of acquittal at the close of the Government's case and renewed that motion at the close of all the evidence. (Trial Transcript ("Tr.") 532, 549) The Court reserved decision on both occasions. (Tr. at 536, 549)

[2] The evidence discussed below is presented in the light most favorable to the Government. United States v. Awad, 518 F. Supp. 2d 577, 581 (S.D.N.Y. 2007) (when considering a post-trial motion for a judgment of acquittal, "the court must 'view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could have been drawn in its favor'" (quoting United States v. Tubol, 191 F.3d 88, 97 (2d Cir. 1999))).

intersection of East 198th Street and the Grand Concourse in the Bronx, after the driver failed to signal when making a turn. (Tr. at 223, 227-28, 267-69, 281) Robinson approached the driver's side of the vehicle, while Doyle walked up to the passenger's side. (Tr. 229, 269) Both officers' police shields hung from chains around their necks. (Tr. 229, 267)

The vehicle was occupied by the driver and a sole passenger – Defendant Bulluck – who sat in the back seat. (Tr. 228-29) Officer Robinson asked the driver – who was "very, very nervous" – "are you okay?" (Tr. 269) Robinson then noticed movement in the back seat; Bulluck took "from his lap a plastic bag, put it around his feet and attempt[ed] to shove it underneath the driver's seat." (Tr. 269, 270) Officer Doyle testified that as he approached on the passenger side, he directed the beam from his "flashlight into the vehicle, in the back passenger area, at which time [he] observed a passenger in the backseat attempting with his feet to try to push a dark-colored plastic bag underneath the front driver's seat." (Tr. 229-31)

Officer Robinson instructed the driver to "open up the locks." (Tr. 271) He then opened the driver's side rear passenger door, and instructed Bulluck to step out. Bulluck did not obey at first; Robinson told Bulluck to get out of the cab two or three times before he complied. (Id.) After Bulluck got out of the vehicle, Robinson instructed him to put his hands on the roof of the car. Robinson then reached into the car and retrieved the plastic bag Bulluck had stuffed under the front driver's seat. (Tr. 271-72, 232)

When Robinson grabbed the plastic bag, he felt hard objects inside which he believed might include a firearm. (Tr. 271-72, 337-38) Robinson then opened the

2

bag, which contained another plastic bag.[3]  Inside the second plastic bag Robinson found six smaller, clear plastic bags that contained a "white, rock-like substance" that Robinson and Doyle believed to be crack cocaine.[4]  (Tr. 273, 278-79, 311, 232).  Robinson then placed Bulluck under arrest.  (Tr. 272)

Two cell phones (an 1850 Nextel phone and an i455 Boost phone) were also inside the black or blue plastic bag, with the crack cocaine.[5]  (Tr. 273, 281-83, 312, 315, 338)  Finally, Robinson recovered $741.30 in cash, which was either on Bulluck's person or was inside one of the plastic bags.  The cash was largely in small denominations: "one 100-dollar bill, two 50-dollar bills, 27 20-dollar bills, 1 one-dollar bill."  (Tr. 283)

DEA Special Agent Rodney Arrington, the case agent, testified that "individuals that are involved in narcotic distribution usually use more than one cell phone.  Typically, you would have one cell phone . . . for personal use, whether it's personal, business, or whatever; and then any of the other cell phones usually are for drug transactions or drug business."  (Tr. 526)  Agent Arrington also testified about an approved telephone list for Bulluck maintained by the Metropolitan Detention Center, where Bulluck was held prior to trial; a list of recorded calls Bulluck placed during his incarceration (GX 12, 15); and contact information stored in the cell phones recovered from Bulluck at the time of his arrest.  Arrington identified common telephone numbers

---

[3]  One of the bags was a blue Aeropostale bag; the other was a black plastic bag of the sort used by small grocery stores.  Robinson could not recall whether the blue bag was inside the black bag or vice versa.  (Tr. 273, 278-80, 311-12)
[4]  The plastic bags contained approximately 596 grams of cocaine base.  (Tr. 372)
[5]  There is no dispute that these were Bulluck's cell phones.  See Def. Br. 3 ("These phones belonged to Mr. Bulluck.")

3

between the two cell phones and the approved telephone list and numbers contacted by Bulluck during his incarceration. (GX 13; Tr. 492-93)

DEA Special Agent John Barry testified as an expert in the means and methods of crack cocaine trafficking in New York City. (Tr. 384) Barry told the jury that – at the retail level – crack cocaine is usually packaged in zip-lock bags that are sold for ten or twenty dollars. (Tr. 385) A ten-dollar bag would typically contain less than half a gram of crack cocaine, and in November 2008, crack cocaine was sold for between thirty and thirty-five dollars a gram. (Id.) Barry told the jury that the 596 grams of crack cocaine seized from Bulluck constituted a wholesale amount and – at a retail price of thirty to thirty-five dollars a gram – had a retail value of approximately $18,000. (Tr. 387, 389) Barry also testified that drug dealers commonly use pre-paid cell phones – such as Bulluck's Boost phone – "because they are anonymous" and are thus difficult to trace. (Tr. 387-88)

Bulluck did not testify at trial. He did introduce Sprint records concerning one of the cell phones recovered at the time of his arrest. Those records show that one of the cell phones was used at 11:56 p.m. on November 8, 2008, at about the time of Bulluck's arrest. (DX A)

## DISCUSSION

### I. RULE 29 LEGAL STANDARD

Under Rule 29, a court must, upon a defendant's motion, "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). It is well settled that "[a] defendant who challenges the sufficiency of the evidence to support his conviction 'bears a heavy burden.'" United

States v. Awad, 518 F. Supp. 2d 577, 581 (S.D.N.Y. 2007) (quoting United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003)).  When deciding such a motion, the court "'must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor.'"  United States v. Torres, 604 F.3d 58, 66 (2d Cir. 2010) (quoting United States v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008)).  The court must also "defer 'to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'"  Id. (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)).  While "a conviction based on speculation and surmise alone cannot stand," United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994), the Government is permitted to "'prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt.'"  United States v. Hassan, 578 F.3d 108, 122 (2d Cir. 2009) (quoting United States v. Rodriguez, 392 F.3d 539, 544 (2d Cir. 2008)).

"'The conviction must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'"  Torres, 604 F.3d at 67 (quoting Chavez, 549 F.3d at 124 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))) (emphasis in Jackson); see also United States v. Irving, 452 F.3d 110, 117 (2d Cir. 2006) (motion for judgment of acquittal should be granted "only if the district court concludes there is 'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt,'" and the defendant shows that "when viewing the evidence in its totality, in a light most favorable to the government, and drawing all inferences in

favor of the prosecution, no rational trier of fact could have found him guilty" (quoting United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972))). The evidence must be considered "'in its totality, not in isolation, and the government need not negate every theory of innocence.'" United States v. Salabarria, No. 09 Cr. 381(PKC), 2010 WL 3467000, at *1 (S.D.N.Y. Aug. 25, 2010) (quoting United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000)).

## II.     THE GOVERNMENT OFFERED SUFFICIENT EVIDENCE TO SATISFY THE KNOWLEDGE ELEMENT UNDER SECTION 841(A)(1)

### A.     Jury Instructions

The jury in this case was given, without objection (Tr. 442-59, 596), the following instructions concerning the knowledge element necessary to support a guilty verdict:

> The second element the government must prove beyond a reasonable doubt is that the defendant acted unlawfully, intentionally, and knowingly. The terms unlawfully, intentionally and knowingly are intended to ensure that if you find the defendant possessed a controlled substance that you also conclude beyond a reasonable doubt that in doing so he knew what he was doing. . . .
>
> An act is done "knowingly" and "intentionally" if it is done deliberately and purposely; that is, the Defendant's acts must have been the product of the Defendant's conscious objective, rather than the product of a mistake or accident, or mere negligence, or some other innocent reason.
>
> To establish this element, the Government must prove that the Defendant knew that he possessed a controlled substance, and that his possession was not due to carelessness or mistake. <u>If you find that the defendant did not know that he had a controlled substance in his possession or that he did not know that what he possessed was in fact a controlled substance, then you must find the Defendant not guilty</u>. Although the Government must prove that the Defendant knew that he possessed a controlled substance, it does not have to prove that the Defendant knew the exact nature of illegal drugs in his possession. It is enough that the Defendant knew that he possessed some kind of controlled substance.

6

> Knowledge, of course, is a matter of inference from the proven facts. Science has not yet devised a manner of looking into anyone's mind and knowing what he or she is thinking. Your decision whether the defendant knew that the materials he possessed were a controlled substance involves a decision about the defendant's state of mind. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case. It is for you to determine whether the Government has established to your satisfaction beyond a reasonable doubt that such knowledge and intent on the part of the defendant existed.

(Tr. 617-18) (emphasis added).

The Court's instructions also included the following circumstantial evidence charge, to which there was also no objection (Tr. 456):

> Generally there are two types of evidence that you may consider in reaching your verdict – direct evidence and circumstantial evidence. . . . Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here someone walked in with an umbrella, which was dripping wet. A few minutes later another person entered with a wet raincoat. Now, you cannot look outside of the [court]room and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of facts that I asked you to assume, you could conclude that it had been raining. That is all there is to circumstantial evidence. On the basis of reason and experience and common sense you infer from one established fact the existence or nonexistence of some other fact.
>
> The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion which you might reasonably draw from other facts that have been proven. Many material facts such as what a person was thinking or intending are rarely easily proven by direct evidence. Often such facts are established by circumstantial evidence.
>
> Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant a jury must be satisfied of a defendant's guilt beyond a reasonable doubt, based on all the evidence in the case, circumstantial and direct.

7

>There are times when different inferences may be drawn from the evidence. The government asked you to draw one set of inferences, the defendant asked you to draw another. It is for you and for you alone to decide what inferences you will draw.

(Tr. 606-07)

The Court may presume that the jury understood and applied these instructions (1) requiring that Bulluck's knowledge that he was carrying a controlled substance be proven beyond a reasonable doubt; and (2) permitting them to convict Bulluck based on circumstantial evidence demonstrating, beyond a reasonable doubt, that he knew that the bags he was carrying contained a controlled substance. See Richardson v. Marsh, 481 U.S. 200, 211 (1987); Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir. 1996) ("[W]e assume that a jury applies the instructions it is given."); Matos v. Ercole, No. 08 Civ. 8814(LBS), 2010 WL 2720001, at *10 (S.D.N.Y. June 28, 2010) ("The jury is presumed to follow the judge's instructions.").

### B.  Evidence Relating To Knowledge

The Government argues that the following evidence is sufficient to demonstrate that Bulluck knew that the bags he was carrying contained a controlled substance:

1. Bulluck was in sole possession of a large amount of crack cocaine – worth $18,000 – at the time of his arrest;

2. Bulluck attempted to hide the bags containing the crack cocaine under the driver's seat after police officers stopped the livery cab in which he was travelling and approached the vehicle;

3. two cell phones belonging to Bulluck were recovered from the inner plastic bag containing the crack cocaine;

4. one of the cell phones was used minutes before Bulluck's arrest;

     5.     one of the cell phones was a pre-paid Boost phone, commonly used by drug dealers because it protects their anonymity; and

     6.     the large amount of small denomination bills in Bulluck's possession at the time of his arrest is consistent with someone who is engaged in the retail distribution of crack cocaine.

The Court agrees that a rational jury could have concluded from this evidence that Bulluck knew that the plastic bags he was carrying contained a controlled substance.

As an initial matter, an inference of knowledge may be drawn from the fact that Bulluck had "sole dominion" over a large amount of crack cocaine worth $18,000.  See United States v. Tran, 519 F.3d 98, 104 (2d Cir. 2008) (approving jury instruction that "the possession of a large quantity of drugs may indicate that the Defendant knew what he had in his possession"); United States v. Joly, 493 F.2d 672, 676 (2d Cir. 1974) ("If a person has cocaine in his possession, a legitimate inference arises that he knows what he possesses is cocaine.").  It is reasonable to infer that whoever entrusted Bulluck with this valuable package would have acquainted him with the nature of its contents.  See United States v. Huezo, 546 F.3d 174, 182 (2d Cir. 2008) ("common sense and experience would support an inference that the principals in the conspiracy would not have trusted an outsider (with no knowledge of their criminal purpose) to transport $1 million in laundered funds"); United States v. Sardinas, No. 08-16695, 2010 WL 2803393, at *8 (11th Cir. July 16, 2010) ("[a] reasonable jury could infer from the quantity of drugs seized that a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge." (quoting United States v. Quilca-Carpio, 118 F.3d 719, 722 (11th Cir. 1997))); cf. Torres, 604 F.3d at 71 (finding that "[the] record does not lend itself to an inference that Torres was so trusted that he must have known that he was dealing with narcotics," because the

9

packages "could not be received by him in a location that he controlled" and Torres was always accompanied by other men when he attempted to obtain the packages).

Given Bulluck's attempt to stuff the bags under the driver's seat when the officers approached the livery cab in which he was travelling, it is reasonable to infer that Bulluck was aware, at a minimum, that they contained contraband that could subject him to criminal prosecution. See Torres, 604 F.3d at 70 ("The evidence as to Torres's statements and conduct was likewise sufficient to permit an inference that Torres was most likely aware that the Packages contained contraband of some kind."); United States v. Tran, 519 F.3d 98, 106 (2d Cir. 2008) (sole possession of drugs together with nervous or suspicious behavior in response to police presence sufficient to support methamphetamine conviction); United States v. Gutierrez-Farias, 294 F.3d 657, 660 (5th Cir. 2002) (finding "ample evidence in the record beyond mere control of the tractor [in which the drugs were found] from which a rational jury could have inferred guilty knowledge" where defendant appeared nervous and gave vague responses to agent's questions (citing United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994) ("Evasive and erratic behavior may be evidence of guilty knowledge."))).

Moreover, the crack cocaine was not wrapped or secreted in a container. Cf. Torres, 604 F.3d at 70 ("The cocaine was well concealed and not visible."); United States v. Rodriguez, 392 F.3d 539, 547 (2d Cir. 2004) ("the heroin was hidden inside a telephone box and also wrapped in two bags"). It was immediately obvious to Officer

Robinson, upon looking inside the bags – which were easily opened – that they contained crack cocaine.[6]  (Tr. 312)

Given the presence of one or both of Bulluck's cell phones in the same plastic bag as the crack cocaine – which was stored in clear, plastic bags – the jury could have reasonably found that Bulluck had seen the crack cocaine.[7]  See United States v. Castro, 813 F.2d 571, 577 (2d Cir. 1987) ("The cocaine was found in a shopping bag along with clothing in Castro's size and a credit card receipt bearing his name.  From this circumstantial evidence, the jury could infer that Castro exercised the necessary dominion and control over the drug with intent to distribute.").  This is particularly true given the evidence that Bulluck was using one of the cell phones just minutes before his arrest.

Finally, while the Court gives less weight to possession of the Boost cell phone and the currency, the jury heard evidence from a drug trafficking expert that possession of a pre-paid cell phone and large quantities of small bills is consistent with street-level narcotics trafficking.  See United States v. Sanchez Solis, 882 F.2d 693, 696-97 (2d Cir. 1989) ("The use of beepers by narcotics dealers may be a proper subject for expert testimony, and we believe that the Government was entitled to argue to the jury

---

[6]  Bulluck contends that the inner bag containing the crack cocaine was tied shut (Def. Reply Br. 2), but the evidence does not support this assertion.  On cross-examination Officer Robinson was asked, "You don't recall whether the black bag was tied or untied?" and he replied, "I believe when I grabbed the bag, it was easy enough for me to open the bags and see the drugs inside the bags."  (Tr. 312)  This exchange does not establish that any bag was tied shut; Robinson merely said that the bag was "easy enough" to open, and counsel did not pursue her suggestion that the bag had been tied shut.

[7]  While Bulluck argues that Officer Robinson "could not say that the drugs and the telephones were commingled within the very same bag" (Def. Reply Br. 3), he twice testified precisely to that.  (See Tr. 312 ("The phones were recovered along with the drugs in one of those bags right there."), 315 ("The cell phones were recovered from either the black bag or the blue bag with all the drugs."))

that Sanchez possessed a device commonly used by drug dealers." (citing United States v. Ginsberg, 758 F.2d 823, 830 (2d Cir. 1985)).

Considering the proof as a whole, there was sufficient evidence from which the jury could find that Bulluck knew that he was in possession of a controlled substance. The conspiracy cases cited by Bulluck are easily distinguished.

In United States v. Torres, the Second Circuit overturned a jury's narcotics conspiracy conviction, finding that the evidence was insufficient to "establish that [Torres] had knowledge of the purposes of the conspiracy of which he was accused." Torres, 604 F.3d 58, 71-72 (2d Cir. 2010). In Torres, the defendant – a homeless man who swept the floors at a bodega – was offered money to pick up two large boxes that had been sent through UPS from Puerto Rico to a Yonkers address that was not his home. Id. at 64, 61. When the UPS driver arrived at the Yonkers location, he refused to deliver the packages – boxes containing two kitchen cabinets, in which ten kilograms of cocaine had been secreted – because the packages had been insured and the Brooklyn address on Torres's New York identification card did not match the Yonkers address. Id. at 61-63. The driver was accosted by two men, who demanded that the boxes be delivered.[8] The men followed the driver to his next delivery and again demanded the boxes. The driver then called UPS security, which took custody of the boxes, opened them, and found cocaine stored within hidden compartments in each cabinet. Id. at 62. UPS personnel contacted the Westchester police, who then arranged for a "controlled delivery." Police called the telephone number provided for the addressee, and told the person answering

---

[8] It was not clear at trial whether Torres was one of the men who met the UPS driver at the Yonkers address. The driver did not identify Torres. See United States v. Torres, 08 Cr. 521(PGG), Trial Transcript at 233-256.

that number that the boxes could be picked up at a UPS store in a Yonkers strip mall. <u>Id.</u> at 62-63.

Torres arrived at the UPS store in a minivan driven by another man. After dropping off Torres, the driver noticed police surveillance, and with "a startled look on his face . . . quickly pulled away." <u>Id.</u> at 63. After retrieving the boxes, the defendant exited the UPS store, looking for the minivan. After searching for the minivan in the parking lot, Torres eventually decided to call a cab. <u>Id.</u> at 64. The defendant was then arrested.

In reversing the jury's verdict, the Second Circuit stated that although "Torres was most likely aware that the Packages contained contraband of some kind," there was no "evidence that Torres knew the packages contained narcotics." <u>Id.</u> at 70. The court noted that "there was no cooperating witness," "[t]here was no evidence of any drug records implicating him," "[t]here was no proof of any narcotics-related conversation to which Torres was a party," and "[t]he cocaine was well concealed and not visible." <u>Id.</u> The court also noted that there was no evidence that Torres "was placed in a position of trust," because (1) the packages were not addressed to his home; (2) they were not sent to a "location that he controlled"; (3) Torres – if present at the Yonkers address – was always accompanied by other men; and (4) Torres was driven to the UPS store by another man, "again with no prospects of having sole dominion over the Packages." <u>Id.</u> at 71. "Torres was never in a position to be alone with the Packages until the driver of the minivan fled the mall upon spotting the police surveillance. This record does not lend itself to an inference that Torres was so trusted that he must have known that he was dealing with narcotics." <u>Id.</u>

As should be obvious from this recitation of the facts in Torres, that case is readily distinguishable. Here, Bulluck was in sole possession of a large amount of crack cocaine. Accordingly, he was clearly in a "position of trust" and had "sole dominion" over the crack cocaine. Moreover, the crack cocaine was not hidden in false compartments in kitchen cabinets, but instead was carried by Bulluck in two flimsy plastic bags, which contained Bulluck's own cell phones, one of which he was using minutes before his arrest. The evidence of consciousness of guilt is also much more compelling here, given Bulluck's behavior in hiding the bags containing the crack cocaine when the police approached. Finally, Bulluck's possession of the Boost phone and the large amount of small-denomination bills provides supporting evidence that was not present in Torres.

United States v. Lorenzo, 534 F.3d 153 (2d Cir. 2008), also cited by Bulluck, is likewise not on point. In that case, the court overturned a jury's narcotics conspiracy conviction, finding that the evidence was insufficient to establish that the defendants had "the specific intent to further a cocaine smuggling and distribution conspiracy." Id. at 160. The case involved an alleged international and far-flung cocaine smuggling conspiracy, and the primary evidence against the defendant involved the transfer of $14,000 to an alleged co-conspirator. The court agreed that the transfer was "suspicious and, viewed in the light most favorable to the government, indicative of participation in illegal behavior." Id. The court noted, however, that "such a transfer is consistent with participation in a wide variety of offenses, and in light of the other evidence, is insufficient to prove [the defendant's] intent to participate in the conspiracy charged in the indictment." Id. Lorenzo is not applicable here, where Bulluck was in

14

actual possession of crack cocaine that was co-mingled with cell phones that were concededly his property.

In sum, Bulluck has cited no case involving comparable facts in which a court has found insufficiency.

## CONCLUSION

For the reasons stated above, Defendant Bulluck's motion for a judgment of acquittal is DENIED.

Dated: New York, New York
      June 8, 2011

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge