UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/20/15_

UNITED STATES OF AMERICA,

-against-

JOHNATHAN BULLUCK,

Defendant.

**MEMORANDUM
OPINION & ORDER**

09 Cr. 652 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On May 25, 2010, Defendant Jonathan Bulluck was convicted of possessing with intent to distribute 50 grams and more of crack cocaine, following a five-day jury trial. The cocaine at issue was discovered during the traffic stop of a livery cab in which Bulluck was the sole passenger. On January 10, 2013, Bulluck was sentenced to 72 months' imprisonment. (Dkt. No. 66)

Bulluck argued on appeal that this Court erred in denying his motion to suppress the cocaine found in the cab, and that his attorney's representation of him in connection with the suppression motion was constitutionally ineffective. The Second Circuit concluded that the attorney's representation was constitutionally inadequate and remanded the matter to this Court to determine whether Bulluck was prejudiced by that representation. United States v. Bulluck, 556 F. App'x 18, 20-22 (2d Cir. 2014) (summary order). For the reasons stated below, this Court concludes that Bulluck was not prejudiced by his counsel's performance, because his suppression motion was not meritorious. See Laaman v. United States, 973 F.2d 107, 113 (2d Cir. 1992) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the

principal allegation of ineffectiveness, the [defendant] must also prove that his Fourth Amendment claim is meritorious. . . .").

## BACKGROUND

### I.       FACTUAL BACKGROUND

Shortly before midnight on November 8, 2008, two New York City Police Department ("NYPD") officers on routine patrol in the vicinity of 196th Street and the Grand Concourse in the Bronx conducted a traffic stop of a livery cab.  (Cmplt. (09 Mag. 1302) ¶ 3(a))  The officers pulled over the cab because the driver failed to signal before making a right turn from 196th Street onto the Grand Concourse.  (Id.)  While speaking with the driver, both officers observed Bulluck – who was a passenger in the back seat of the cab – attempt to stuff a plastic bag under the driver's seat.  (Id. ¶ 3(b))  Bulluck was instructed to exit the vehicle.  (Id.)  A police officer then recovered the plastic bag from underneath the driver's seat.  (Id. ¶ 3(c))  Inside the bag were six packages containing 596.4 grams of crack cocaine, $741 in cash, and two cell phones.  (Id. ¶¶ 3(c)-(d); Suppression Hearing Def. Ex. C)  Bulluck was arrested and subsequently charged with possessing with intent to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A).  (Indictment (Dkt. No. 6))

### II.      DEFENDANT'S MOTION TO SUPPRESS

Bulluck filed a motion to suppress the drug evidence on October 7, 2009. In late November 2009, the parties submitted amended briefs at the Court's direction. (Dkt. Nos. 17, 20, 21)  A suppression hearing was conducted on December 30, 2009, and January 7, 2010.  Bulluck did not testify at the hearing, but he submitted two declarations – dated October 7, 2009, and November 3, 2009 – in support of his motion.  (Dkt. Nos.

19-2, 19-3)  After the hearing, the parties submitted post-hearing briefs.  (Dkt. Nos. 24,

27, 28)

### A.     Bulluck's Declarations

Regarding the traffic stop, Bulluck's October 7 declaration states that

> an unmarked police car signaled for the driver to pull over.  When this
> happened, we were not doing anything criminal.  I did not know why we
> were being pulled over.

(Oct. 7 Decl. (Dkt. No. 19-2) ¶ 5).

With respect to the crack cocaine, both of Bulluck's declarations state the

following:

> I was not aware of any drugs, or other illegal items being in the taxi-cab
> when I got into the vehicle.  I did not see any drugs or other illegal items
> anywhere in the car.  Nor was there any drug or drug paraphernalia visible
> anywhere in the backseat of the car.

(Id. ¶ 4; Nov. 3 Decl. (Dkt. No. 19-3) ¶ 4).  In his November 3, 2009 declaration, Bulluck

adds that "[i]n the back passenger area of the car was a plastic bag that belonged to me

and that bag contained my possessions."  (Nov. 3 Decl. (Dkt. No. 19-3) ¶ 5)  Bulluck

denied pushing the plastic bag underneath the driver's seat or making any other

"suspicious movements" when the police officers approached the livery cab.  (Oct. 7

Decl. (Dkt. No. 19-2) ¶ 9)

According to Bulluck, after the livery cab was stopped, one of the police

officers asked Bulluck to step out of the car and walked him to the rear of the car:

> After I stepped out of the car, the police escorted me away and put me at a
> distance from the driver and a distance from the car.  With my hands
> behind my back[,] the officer walked me to the back of the car in which I
> had been a passenger.  I was not free to leave and was being physically
> held by one of the two officers. . . .
>
> The other police officer then searched the back passenger side of the car.

3

. . . Neither the driver nor I consented to this search.

(Id. ¶¶ 10-12)

## B.   Hearing Testimony

The NYPD officers who conducted the traffic stop and search – Dominic Robinson and Kenneth Patrick Doyle – testified at the suppression hearing.

Doyle and Robinson were assigned to the Anti-Crime Unit at the 52nd Precinct in the Bronx.  (Dec. 30, 2009 Tr. 7, 21)  Members of the Anti-Crime Unit focus on robberies, grand larceny, and gun-related crimes.  While on patrol, unit members commonly make traffic stops when they observe traffic infractions.  (Id.)

On November 8, 2008, Doyle and Robinson were on patrol in the Bronx in an unmarked vehicle.  (Id. at 8, 22)  Officer Robinson was driving, and Officer Doyle was seated in the front passenger seat.  (Id.)  Both officers were dressed in plainclothes. (Id. at 8, 21)

At about midnight, while travelling westbound on 196th Street, the officers observed a vehicle bearing Taxi and Limousine Commission license plates make a right turn from 196th Street onto the Grand Concourse.  (Id. at 9, 23)  Both officers testified that the driver failed to signal when making the right turn.  Accordingly, the officers initiated a traffic stop.  (Id. at 9-10, 23)

The car – a livery cab – pulled over to the left side of the service road on the Grand Concourse.  (Id. at 10)  Officer Robinson then approached the livery cab on the driver's side while Officer Doyle approached on the passenger side. (Id. at 10-11, 24) Although Officer Robinson was in plainclothes, his shield was visible over his outermost garment.  (Id. at 11)

Officer Robinson testified that the driver appeared "very, very nervous." When the officer asked if everything was alright, the driver replied "yes," however. (Id. at 11) Robinson asked the driver again if he was "sure everything [was] ok." (Id.) While Robinson was speaking with the driver, he used a flashlight to illuminate the interior of the car. (Id.) Robinson observed Bulluck – who was seated in the back seat directly behind the driver – take "a plastic bag" from his lap, "drop[] it to the floor," and using "both of his hands" "attempt[] to put [the bag] underneath the driver's seat." (Id.) Officer Robinson testified that the Defendant "hunched over [as] he tried to push [the plastic bag] underneath the seat." (Id.)

Officer Doyle – who was also using a flashlight – testified that after the officers approached the livery cab he observed Bulluck "attempting to push a bag underneath the front driver's seat with his right foot." (Id. at 24) According to Doyle, Bulluck was "moving his whole body more to try to get the bag further underneath the seat"; his hands were "at his side." (Id. 24-25)

Officer Robinson testified that Bulluck's actions made him concerned for his safety, and Robinson instructed the driver to pop the locks on the car doors. (Id. at 12; Jan. 7, 2010 Tr. 54, 76) Robinson then opened the driver's side rear passenger door and instructed Bulluck to step out of the vehicle. (Dec. 30, 2014 Tr. 12; Jan. 7, 2010 Tr. 54) Officer Robinson repeated this direction three or four times – elevating his voice progressively – before Bulluck obeyed. (Dec. 30, 2009 Tr. 12-13; Jan. 7, 2010 Tr. 47) After Officer Robinson instructed Bulluck to exit the vehicle, Officer Doyle came over from the passenger's side of the vehicle to the driver's side. (Dec. 30, 2009 Tr. 12; Jan. 7, 2010 Tr. 45) Robinson testified that Bulluck was "angry" as he stepped out of the cab.

(Dec. 30, 2009 Tr. 13)  Robinson instructed Bulluck to put his hands on top of the car and then frisked him for weapons. (Id. at 12-13)  No contraband was found on Bulluck.  (Jan. 7, 2010 Tr. 59-60)

After Bulluck exited the back seat, the plastic bag in question was "visible on the floor." (Dec. 30, 2009 Tr. 12)  Officer Robinson testified that as he reached for the bag, he asked Bulluck, "[I]s this bag yours?"  Bulluck responded, "[T]hat's not mine, that bag's not mine."[1]  (Id. at 12, 14; Jan. 7, 2010 Tr. 77)  Officer Robinson then grabbed the bag, which was a blue Aeropostale bag.  (Jan. 7, 2010 Tr. 65-66, 73)  When Officer Robinson grabbed the bag he felt something hard, which he thought might be "a gun or some other weapon" that presented a risk to his safety.  (Jan. 7, 2010 Tr. 65-66, 73, 76)  Robinson then opened the blue plastic bag, finding another plastic bag, which was black in color.  The black plastic bag contained six clear plastic bags holding crack cocaine. (Id. at 65-66)  The black plastic bag containing the clear bags holding crack cocaine was not knotted closed.  (Id.)  In addition to the crack cocaine, Robinson found two cell phones, one or both which was the hard object Robinson felt when he first grabbed the blue Aeropostale bag.[2]  (Id. at 66, 73)  Once Robinson "saw the drugs inside the bag," he handcuffed Bulluck and placed him under arrest.  (Dec. 30, 2009 Tr. 12, 14)

---

[1] In its opinion denying Bulluck's motion to suppress, this Court rejected as not credible Officer Robinson's testimony concerning Bulluck's statement that the bag did not belong to him.  United States v. Bulluck, No. 09 Cr. 652 (PGG), 2010 WL 1948591, at *7-9 (S.D.N.Y. May 13, 2010).

[2] Officer Robinson could not recall whether the cell phones and the clear bags of crack cocaine were inside the same plastic bag.  (Id. at 75-76)  Defendant has not argued in his post-remand briefing that there is any significance to the fact that the cell phones may not have been inside the same plastic bag as the crack cocaine.  See Dkt. Nos. 86, 87.

Officer Doyle gave a somewhat different account at the hearing.  He testified that after "Officer Robinson [took Bulluck] out of the vehicle," Doyle went to the driver's side of the vehicle to assist Officer Robinson.  (Id. at 25)  Officer Robinson was attempting to place Bulluck's left hand on top of the car, and his right hand on top of the trunk, and "a little bit of a struggle" ensued.  (Id.)  Doyle grabbed Bulluck's right arm while Officer Robinson grabbed his left arm and placed it behind his back.  (Id.)  Officer Robinson cuffed Bulluck, who was then placed in the back of the officers' police vehicle.  (Id.)  Doyle remained by the police vehicle while Officer Robinson returned to the livery cab and retrieved the plastic bag.  (Id. at 25-26)  Officer Robinson brought the plastic bag back to where Doyle was standing, opened the bag, and showed Doyle the crack cocaine inside.  (Id. at 26)

### C.   **Post-Hearing Briefing**

At the close of the hearing, defense counsel requested the opportunity to file a post-hearing brief.  (Jan. 7, 2010 Tr. 91).  The Court granted that application, and invited the parties to brief several issues, including Bulluck's expectation of privacy in

> the bag itself.  Under U.S. v. Paulino[,] the facts were that after a police officer approached the vehicle he observed the passenger in the back seat put something under a rubber mat and the officer retrieved what . . . turned out to be a wad of counterfeit money.  The Second Circuit held that defendant as a passenger in the vehicle did not have a reasonable expectation of privacy in the area under the rubber mat and therefore the district court had erred in granting the motion to suppress.
>
> So the question here is – there's a few questions – does the fact that the defendant was in a livery cab as opposed to a private car give him a greater expectation of privacy with respect to the passenger area of the vehicle? . . .
>
> There are also legal issues associated with the fact that the evidence was in a bag or perhaps in two bags.  In Paulino[,] the wad of counterfeit money wasn't in any container at all.  It was just a wad of cash that was found

7

> under the rubber mat. . . . [T]here needs to be legal analysis about what is
> the significance of the fact that the drugs here were in one or more plastic
> bags? How does that bear on the inquiry . . . concerning a reasonable
> expectation of privacy?

(Id. at 93-94)

Despite the Court's invitation, defense counsel did not brief the issue of

whether Bulluck had a reasonable expectation of privacy in the plastic bag itself. Instead,

defense counsel addressed whether Bulluck had a reasonable expectation of privacy in

the rear of the cab and whether he had abandoned the property at issue. See Def. Post-

Hearing Br. (Dkt. No. 24).

### D.      The May 13, 2010 Order Denying the Motion to Suppress

On May 13, 2010, the Court denied Bulluck's motion to suppress the

cocaine. United States v. Bulluck, No. 09 Cr. 652 (PGG), 2010 WL 1948591 (S.D.N.Y.

May 13, 2010). The Court rejected the Government's argument that the plastic bag – and

the crack cocaine inside – had been abandoned, finding Robinson's testimony on this

point not credible. Id. at *9. The Court found, however, that Bulluck's Fourth

Amendment rights had not been violated because – as a passenger in a livery cab – he did

not have a reasonable expectation of privacy in the rear of the cab. Id. at *22.

In denying Bulluck's suppression motion, this Court also noted that

defense counsel had not addressed the issue of Bulluck's reasonable expectation of

privacy in the plastic bag itself:

> Although the Court specifically invited Bulluck to brief the question of
> whether he had an independent expectation of privacy in the plastic bags
> seized by the police (1/7/10 Tr. 94) – requiring that the opening of the
> plastic bags be justified by an exception to the Fourth Amendment's
> warrant requirement – the Defendant did not brief this issue. It is the
> Defendant's burden to establish that he had a reasonable expectation of

privacy in a particular area or object searched. . . .  Because Bulluck has
not briefed this issue, it will not be addressed by this Court.

Id. at *22 n.17.

### III.   BULLUCK'S APPEAL AND THE <br> SECOND CIRCUIT'S REMAND ORDER

On appeal, Bulluck challenged the denial of his motion to suppress and

argued that he had received ineffective assistance of counsel in connection with the

suppression motion.  The Second Circuit found that Bulluck's attorney was

constitutionally inadequate in not briefing the issue of whether Bulluck had a reasonable

expectation of privacy in the plastic bags that had been searched.  Bulluck, 556 F. App'x

at 19-20.  The Circuit found that "a thick accretion of cases . . . establishes that

passengers in vehicles that they do not own or rent have a legitimate expectation of

privacy in the closed containers they possess."  Id. at 20.  Accordingly, "Bulluck retained

a legitimate expectation of privacy in the bag[s], regardless of whether he had such an

expectation with respect to the passenger compartment generally."  Id.  The Circuit

concluded that Bulluck's "[c]ounsel's choice to focus on the . . . unresolved issue [of

whether a taxicab passenger has an expectation of privacy in the rear of the cab] rather

than on settled law that clearly permitted the court to proceed to assess the legality of the

search fell below an objective standard of reasonableness."  Id.

The Second Circuit stated, however, that it could not "determine on the

present record . . . whether counsel's deficient performance actually prejudiced Bulluck."

(Id.)  Accordingly, the court remanded the case to the district court for "necessary fact-

finding."  Id. at 21-22.  The Circuit suggested that this Court make "specific findings"

regarding

(1) whether the officers had probable cause to search the livery cab and – by extension – the plastic bags, under the so-called "automobile exception" to the warrant requirement;

(2) "whether the search of the plastic bags might be justified as an inventory search"; and

(3) whether the officers had " a reasonable suspicion that there might be a weapon in the car that could pose a danger to the officers upon the release of either the driver or Bulluck."

See id. at 20-21.

## IV.    PROCEEDINGS FOLLOWING REMAND

After the remand, this Court conducted a conference to determine, inter alia, whether either side wished to re-open the suppression hearing to introduce additional evidence concerning the issues raised by the Second Circuit. (Tr. of March 14, 2014 Proceedings (Dkt. No. 80))  Both sides stated that they saw no need to re-open the hearing and wished to proceed on the basis of the evidentiary record already in place. (Id. at 11)  Accordingly, the Court directed the parties to brief the issue of whether Bulluck was prejudiced by his former counsel's representation, with a focus on the three issues listed in the Second Circuit's summary order.  (Id. at 14-15)

## DISCUSSION

## I.    THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT IS NOT APPLICABLE

### A.    Legal Standard

"Under the 'automobile' exception to the warrant requirement, officers may conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." United States v. Wilson, 699 F.3d 235, 245 (2d Cir. 2012).  "'The scope of a warrantless search of an automobile . . . is

10

defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" Id. at 246 (quoting United States v. Ross, 456 U.S. 798, 824 (1982)) (alteration in original).  "Where the probable cause upon which the search is based 'extends to the entire vehicle,' the permissible scope of a search pursuant to this exception includes '"every part of the vehicle and its contents [including all containers and packages] that may conceal the object of the search."'" United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010) (quoting United States v. Harwood, 998 F.2d 91, 96 (2d Cir. 1993) (quoting Ross, 456 U.S. at 825) (alteration in original)).  Even where there is not probable cause to search an entire vehicle, "police may conduct a warrantless search of a container within a vehicle if they have probable cause to believe that the container holds contraband or evidence." United States v. DiMarco, No. 12 CR 205 (RPP), 2013 WL 444764, *8 n.6 (S.D.N.Y. Feb. 5, 2013); see California v. Acevedo, 500 U.S. 565, 576 (1991) ("[T]he Fourth Amendment does not compel separate treatment for an automobile search that extends only to a container within the vehicle.").

   "Probable cause to conduct a search 'exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched.'" Wilson, 699 F.3d at 245 (quoting United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) (internal quotation marks and alterations omitted)).

   **B.**   **Application**

   The Government argues that the search of Bulluck's plastic bags was justified under the automobile exception.  (Govt. Br. (Dkt. No. 82) at 12)  The

Government claims that Bulluck's attempt to hide the bags, his refusal to exit the cab after the officers instructed him to do so three or more time, his angry demeanor upon leaving the cab, and his "struggle" with the NYPD officers – considered together with the late hour at which the stop occurred and the driver's nervousness – gave the officers probable cause to search the rear of the cab and the plastic bags.  (Id. at 12-13)

While courts consider circumstances such as these in determining whether probable cause to search exists, the facts here – even considered together – did not provide the officers with probable cause to believe that the rear of the livery cab or the plastic bags on the floor contained contraband or evidence of a crime.  See United States v. Paulino, 850 F.2d 93, 94, 96 (2d Cir. 1988) (finding automobile exception inapplicable because the officers lacked probable cause to search the automobile, even after they observed a car with three occupants double-parked in a high crime area at night, received a "noncommittal" response from the driver about what the occupants were doing there, and saw a passenger in the rear seat make furtive movements to conceal an object under the car's floor mat).  Although Bulluck's actions clearly suggest that he was attempting to hide something from the police, none of the facts and surrounding circumstances gave the officers a reasonable basis on which to conclude what that something was.  There is no evidence, for example, that the officers had encountered Bulluck previously or had reason to believe that he commonly engaged in drug trafficking or other criminal conduct.  There is likewise no evidence that Bulluck made incriminating statements that would raise the officers' suspicions to the level of probable cause.  Because the officers did not have probable cause to believe that the vehicle and/or the plastic bags on the floor

contained evidence of contraband or a crime, the officers' search cannot be justified

under the automobile exception.[3]

---

[3] The cases cited by the Government are not to the contrary. (See Govt. Br. (Dkt. No. 82) at 12-13)  The facts in each of these cases present a more substantial basis for a finding of probable cause than those present here.  For example, in United States v. Cruz, 834 F.2d 47, 47-49 (2d Cir. 1987), the automobile at issue was searched after multiple days of surveillance, including several hours of surveillance on the day the search was conducted.  This surveillance had revealed that the defendant, his brother, and others appeared to be exchanging, concealing, and transporting packages in connection with the sale of narcotics. Id.  Moreover, the investigating officers did not search the car until after the defendant had attempted to evade them as they were pulling him over on the highway. See id. at 49-50.

Likewise, in United States v. Hernandez, 628 F. Supp. 190, 191 (S.D.N.Y. 1986), officers at a drunk-driving roadblock observed a passenger exit the vehicle that the defendant was driving and attempt to walk away from the roadblock.  When stopped and questioned by police, the passenger denied that he had exited the car and claimed to be simply walking on the street. Id.  The vehicle driven by the defendant lacked a front license plate and had a temporary paper license plate taped to the rear window. Id.  One of the officers knew that temporary license plates were being sold in stores in the area to individuals seeking to evade vehicle registration and insurance requirements. Id.  As that officer approached the car, he observed the defendant stuffing something between the seats and looking into the rearview mirror. Id.  When the officer asked the defendant for his license and registration, the defendant groped around in the darkened car for several minutes; after the driver failed to produce the requested documents and stated that he did not have a driver's license, the officer asked him to step out of the vehicle. Id.  As the defendant opened the car door, the car's interior light went on, revealing two credit cards lying face up on the floor. Id. at 192.  When the officer searched the area between the seats "looking for possible weapons or contraband," he found ten credit cards that turned out to be counterfeit. Id.

Sibron v. New York, 392 U.S. 40, 66 (1968) – also cited by the Government – addresses the issue of whether there was probable cause to arrest a defendant where a police officer heard strange noises outside his apartment door that "led him to believe that someone sought to force entry."  The officer then observed two men – whom he had never seen before during his twelve years living in the building – "tiptoeing furtively" in the hallway.  The men fled once the officer entered the hallway. Id.  The Court noted that it would be "difficult to conceive of stronger grounds for an arrest, short of actual eyewitness observation of criminal activity." Id.  Here, by contrast, the question is not whether the officers had probable cause to arrest Bulluck but whether they had probable cause to believe that the livery cab and the plastic bags contained contraband or evidence of a crime.  Moreover, the officers did not have probable cause to believe that a crime was in progress; they had no prior knowledge concerning Bulluck; and Bulluck did not flee when the officers approached.

## II.     THE INVENTORY SEARCH EXCEPTION TO THE WARRANT REQUIREMENT IS NOT APPLICABLE

The Government argues that "the evidence seized from the [plastic] bag[s] is admissible because it would have been obtained inevitably pursuant to a valid inventory search of the bag[s]."[4] (Govt. Br. (Dkt. No. 82) at 28)  According to the Government, Officer Robinson "took legitimate custody of the bag[s] . . . at a point when the officers had a lawful basis for placing the defendant under arrest." (Id.)  The Government claims that the officers had probable cause to arrest Bulluck for committing obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05.[5] (Id.)  Under the Government's theory, after arresting Bulluck for this offense, the officers would have been authorized to impound his personal effects – including the plastic bags – and NYPD procedures provide for an inventory of such personal effects in these circumstances.[6] Id. at 29 & n.9.  The Government argues that the officers "inevitably

---

[4] "Under the inevitable discovery doctrine, 'evidence that was illegally obtained will not be suppressed "if the government can prove that the evidence would have been obtained inevitably" even if there had been no statutory or constitutional violation.'" Mendez, 315 F.3d at 137 (quoting United States v. Roberts, 852 F.2d 671, 675-76 (2d Cir. 1988) (quoting Nix v. Williams, 467 U.S. 431, 447 (1984))).  "In some cases, the government successfully invokes the inevitable discovery exception on the basis of inventory search procedures.  In such cases, the court typically concludes that even if the invalid search had not been conducted, the evidence would nonetheless have been discovered in the course of a valid inventory search conducted pursuant to standardized, established procedures." Id. at 137-38.

[5] "The elements of obstructing governmental administration . . . include:  (1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995).

[6] The Government cites an NYPD Patrol Guide – not introduced at the hearing – stating that "[p]roperty that is not inventoried from an automobile but is possessed or under the control of an arrested individual, may be inventoried and all items found therein may be vouchered as the prisoner's property." (Govt. Br. (Dkt. No. 82), Ex. 1 (NYPD Patrol Guide))

would have obtained the evidence seized from the plastic bag[s] had they followed the NYPD inventory search guidelines and searched the plastic bag[s] at the precinct." (Id. at 30)

### A.    **Legal Standard**

"'[T]he inventory search constitutes a well-defined exception to the warrant requirement.'" United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002) (quoting Illinois v. Lafayette, 462 U.S. 640, 643 (1983)).  "Consistent with the Fourth Amendment, law enforcement officials may open closed containers as part of an inventory search so long as they act in good faith pursuant to 'standardized criteria . . . or established routine.'"  United States v. Thompson, 29 F.3d 62, 65 (2d Cir. 1994) (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)).  "The existence of such a valid procedure may be proven by reference to either written rules and regulations . . . or testimony regarding standard practices."  Id.  "A valid inventory search routine may allow the searching officers 'sufficient latitude to determine whether a particular container should or should not be opened,' but '[t]he individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime."'"  Mendez, 315 F.3d at 137 (quoting Wells, 495 U.S. at 4 (quoting Colorado v. Bertine, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring))).

### B.    **Application**

As an initial matter, the Government offered no evidence at the suppression hearing – whether testimony or documents – concerning the NYPD's

inventory search procedures.[7]  The Government likewise did not elicit any testimony

from Officers Robinson and Doyle as to whether charges would have been brought

against Bulluck absent discovery of the drugs.  Accordingly, there is no evidentiary

foundation for the Government's inventory search argument.

> An inventory of the contents of the plastic bags was not "inevitable"

unless Officers Robinson and Doyle intended to arrest Bulluck regardless of what the

plastic bags contained.  Officer Robinson testified, however, that Bulluck was arrested

only after Robinson opened the plastic bags and discovered the crack cocaine.  (Jan. 7,

2010 Tr. 62)  Indeed, Robinson testified that Bulluck – while restrained – was not under

arrest until that moment.  (Id.) ("He was not under arrest.  I just wanted to see what was

going on.")  Nothing in Robinson's testimony suggests that Bulluck would have been

arrested absent the discovery of crack cocaine.

> While Officer Doyle testified that Bulluck was handcuffed and placed in

the officers' vehicle after resisting a patdown frisk, the purpose of this action appears to

have been to keep Bulluck out of the way while the officers completed their

investigation.  Doyle did not testify that Bulluck was told that he was under arrest at that

time.  Indeed, Doyle testified that it was only after the crack cocaine had been discovered

that the officers called for a police cruiser to transport Bulluck back to the precinct house

for arrest processing:

> [After Officer Robinson showed Officer Doyle the crack cocaine,] [w]e
> called for another unit.  One midnight unmarked car showed up.  [The]
> sergeant who was in an unmarked car showed up, and a marked police car
> showed up to transport Mr. Bulluck back to the precinct. . . .  [When we]
> got back to the precinct, . . . the arrest process started.

---

[7]  This omission may not be remedied through the device of attaching the Patrol Guide as
an exhibit to the Government's post-hearing brief.

(Dec. 30, 2009 Tr. 26)

      Finally, the arrest report for Bulluck contains no mention of an obstruction of governmental administration charge.  The arrest report instead states that Bulluck was arrested for possession of drugs.[8]  (NYPD Arrest Report B08686419)

      Because there is no evidence that the officers would have pursued criminal charges against Bulluck absent the discovery of the crack cocaine, there is no reason to believe that the crack cocaine would have been discovered in the course of an inventory search associated with Bulluck's arrest for obstruction of governmental administration.

## III.    THE SEARCH OF THE PLASTIC BAGS WAS JUSTIFIED AS PART OF A VALID "AUTOMOBILE FRISK"

### A.    Legal Standard

      In Michigan v. Long, 463 U.S. 1032 (1983), the Supreme Court held that

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer[ ] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Id. at 1049 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).  Essentially, "Long authorized a 'frisk' of an automobile for weapons." Maryland v. Buie, 494 U.S. 325, 332 (1990). "Thus, where there has been a Terry stop of an automobile, the officer may 'tak[e] steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.'" McCardle v. Haddad, 131

---

[8]  Although the arrest report was not admitted into evidence during the suppression hearing, the Court may take judicial notice of it as a public record.  See Smith v. City of New York, 12 Civ. 4891 (KPF), 2013 WL 5942224, at *1 (S.D.N.Y. Nov. 6, 2013) ("[J]udicial notice may be taken under Fed. R. Evid. 201 [of] public records such as arrest reports, indictments, and criminal disposition data.").

F.3d 43, 48 (2d Cir. 1997) (quoting <u>Terry</u>, 392 U.S. at 23).  Accordingly, under <u>Long</u>,

"'[t]he issue is whether a reasonably prudent man in the circumstances would be

warranted in the belief that his safety or that of others was in danger.'"  <u>Long</u>, 463 U.S. at

1050 (quoting <u>Terry</u>, 392 U.S. at 27).  The test is one of "reasonable suspicion[, which] is

determined based on the totality of the circumstances[,] but 'the likelihood of criminal

activity need not rise to the level required for probable cause, and . . . falls considerably

short of satisfying a preponderance of the evidence standard.'"  <u>United States v. Elmore</u>,

482 F.3d 172, 179 (2d Cir. 2007) (quoting <u>United States v. Arvizu</u>, 534 U.S. 266, 274

(2002)).

 Where reasonable suspicion exists, the "search . . . must be 'limited in

scope to this protective purpose.'"  <u>McCardle</u>, 131 F.3d at 48 (quoting <u>Adams v.</u>

<u>Williams</u>, 407 U.S. 143, 146 (1972)).  Accordingly, the "search of the car [is] restricted

to those areas to which [the defendant] would generally have immediate control, and that

could contain a weapon. . . .  [T]he intrusion [must be] 'strictly circumscribed by the

exigencies which justifi[ed] its initiation.'"  <u>Long</u>, 463 U.S. at 1050-51 (quoting <u>Terry</u>,

392 U.S. at 26).  "If, while conducting a legitimate <u>Terry</u> search of the interior of the

automobile, [however,] the officer should . . . discover contraband other than weapons, he

clearly cannot be required to ignore the contraband, and the Fourth Amendment does not

require its suppression in such circumstances."  <u>Id.</u> at 1050 (citations omitted).

 **B.**  **Application**

 Here – regardless of which officer's account is accepted – the search of

the plastic bags was justified as an "automobile frisk" under <u>Long</u>.

As an initial matter, there is no dispute that the livery cab was properly stopped based on a traffic infraction. (Dec. 30, 2009 Tr. 9-10, 23) It was about midnight in the Bronx, and the livery cab driver appeared to be "very, very nervous." (Id. at 11) As the officers approached the vehicle, Bulluck took a plastic bag off his lap, threw it on the floor, and attempted to push the bag under the driver's seat. (Id.) Bulluck then refused to exit the vehicle where the bag was located after being instructed to do so by the officers three or four times. (Id. at 12-13) He appeared angry when he finally exited. (Id. at 12) Officer Robinson testified that, under the circumstances, he feared for his safety, and he frisked Bulluck, searched the rear of the livery cab, and searched the plastic bags out of concern for his safety. (Id. at 11-12; Jan. 7, 2010 Tr. 41-42, 76)

This Court concludes that Officer Robinson cited "specific, articulable facts" that would warrant a "'reasonably prudent man in the circumstances . . . in the belief that his safety or that of others was in danger." See Long, 463 U.S. at 1050 (quoting Terry, 392 U.S. at 27); see also United States v. Torres, No. 10 Cr. 1159 (JGK), 2011 WL 2209144, at *7 (S.D.N.Y. June 7, 2011) ("[The] search was fully justified under Long. The defendant's vehicle was validly stopped based on the . . . traffic infractions that the officers observed. Upon approaching the vehicle, both [officers] saw the defendant make a suspicious movement toward the dashboard. That movement alone was sufficient to justify a protective search of the dashboard compartment.")[9]; United

---

[9] Bulluck challenges the district court's assertion in Torres that furtive movements alone are sufficient to provide reasonable suspicion for a search under Long. (Def. Reply Br. (Dkt. No. 87) at 16-18) Defense counsel also argues that the cab driver's nervousness alone is insufficient to justify the search here. See Def. Br. (Dkt. No. 86) at 14-15. The issue for this Court is not whether each of these circumstances, considered in isolation, provides a sufficient basis for a search under Long, however. Instead, this Court has

States v. Green, No. 99 Cr. 0309 (WHP), 1999 WL 1256239, at *3 (S.D.N.Y. Dec. 22, 1999) (noting in dicta that "the search of the [car] trunk was proper as a protective search. Sergeant Delaney saw the defendant make a furtive movement toward the rear of the car with a black object in his hand.  That observation gave Sergeant Delaney reason to fear that the black object [he saw in the defendant's hand] was a weapon.  Once Sergeant Delaney observed [a] passageway between the passenger seat, where two passengers were seated, and the trunk, the possibility that someone could reach into the trunk for a weapon warranted a protective search"); cf. United States v. Williams, 822 F.2d 1174, 1176-81 (D.C. Cir. 1987), superseded by rule on other grounds (officers had reasonable suspicion to seize a bag from a car where – after observing the defendant and another passenger bend over something in their laps – the officers approached the vehicle, saw the defendant shove a brown object or paper bag under his leg, and – after the defendant was instructed to exit the vehicle – observed the defendant attempt to flip the bag into the rear of the car).

   The fact that Bulluck had exited the vehicle before the plastic bags were searched does not alter the analysis.  The Long court explicitly rejected the argument that "it was not reasonable for the officers to fear that Long could injure them, because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located in the automobile."  Long, 463 U.S. at 1051. Indeed, when Long's vehicle was being searched, he was standing at the rear of the car with one officer while another officer performed the search.  Id. at 1036.  The Supreme

---

concluded, on the basis of the totality of the circumstances, that Officer Robinson's search of the rear of the livery cab and the plastic bags was justified.

Court acknowledged that, "just as a <u>Terry</u> suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a <u>Terry</u> suspect in Long's position break away from police control and retrieve a weapon from his automobile."[10] <u>Id.</u> at 1051. "In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." <u>Id.</u> at 1051-52.

Here, Officer Robinson testified that Bulluck remained beside the vehicle – under Officer Doyle's supervision – during the search of the livery cab and the plastic bags, and was not yet handcuffed.  (Dec. 30, 2009 Tr. 12, 14)  Accordingly, Bulluck might have broken away from the officers and retrieved a weapon from the plastic bags in the rear of the livery cab.

Even if this Court were to accept Officer Doyle's account that Bulluck had been handcuffed and placed in the rear of the officers' car, the search was still justified as a frisk, because the record – as discussed above – indicates that the officers had not engaged in a full custodial arrest of Bulluck.  Stated another way – absent discovery of the crack cocaine – Bulluck would have been released, because there is no evidence that the officers intended to pursue a charge of obstruction of governmental administration against him.  Accordingly, Bulluck might have re-entered the livery cab after the officers completed their investigation and then had access to any weapons contained in the plastic bags.  <u>See</u> <u>Long</u>, 463 U.S. at 1052.  The search, therefore, still

---

[10] In part for this reason, the fact that the frisk of Bulluck did not yield any weapons is not dispositive on the issue of whether the officers were justified in searching the rear of the livery cab and the plastic bags.  <u>See</u> <u>Long</u>, 463 U.S. at 1048 ("[W]e have . . . expressly recognized that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed.").

served the purpose of ensuring officer safety, even if Bulluck was temporarily restrained while it was taking place.  See id.; see also United States v. Morgan, 729 F.3d 1086, 1091 (8th Cir. 2013) ("[I]t is reasonable for officers to fear for their safety – even when a suspect is secured – because the suspect will be permitted to return to his vehicle and to access any weapons inside at the end of the investigation."); United States v. Smith, 645 F.3d 998, 1002-03 (8th Cir. 2011) ("[P]olice officers may reasonably handcuff a suspect and place him in a squad car during the course of a Terry stop in order to protect their safety and maintain the status quo. . . .  After securing a suspect, officers may also conduct a protective sweep of the vehicle's passenger compartment to search for dangerous weapons that the suspect or other occupants might later access."); United States v. Griffin, 589 F.3d 148, 154 (4th Cir. 2009) ("Although Griffin was restrained in the backseat of the police vehicle at the time of the search, he was being detained at that time solely pursuant to the Terry stop.  If Griffin had been released after the brief detention, as he presumably would have been, he would have regained access to his vehicle and any weapon inside.").  As the Long court observed, "a Terry investigation, such as the one that occurred here, involves a police investigation 'at close range,' . . . when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger. . . .'" Long, 463 U.S. at 1052 (quoting Terry, 392 U.S. at 24, 28) (emphasis in Long).[11]

---

[11]  Bulluck's reliance on Arizona v. Gant, 556 U.S. 332 (2009), is misplaced.  In Gant, the Supreme Court held that "police [may] search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. at 343 (emphasis added).  A search incident to arrest, however, is distinguishable from an "automobile frisk," because there

Officer Robinson's search of the plastic bags was justified as part of a protective search. See Long, 463 U.S. at 1050-51 (upholding search of a "leather pouch containing marijuana [in the vehicle, because it] could have contained a weapon. . . . [and therefore] it [was] clear that the intrusion was 'strictly circumscribed by the exigencies which justifi[ed] its initiation'") (quoting Terry, 392 U.S. at 26); cf. Paulino, 850 F.2d at 98 ("It would be anomalous to rule that the officer could not examine that area of the vehicle where the activity which originally justified the protective search occurred."; upholding search that involved lifting a car floor mat at which the defendant's furtive movements had been directed). When Officer Robinson touched the bag Bulluck had attempted to hide as the officers approached, he immediately felt hard objects inside that could have been weapons. (Jan. 7, 2010 Tr. 65-66, 73, 76) Under these circumstances, a police officer is permitted, under Long, to open the bag to determine whether it contains weapons. See United States v. Perez, 574 F. Supp. 1429, 1437 (E.D.N.Y. 1983) ("[The officer] testified that when he grabbed [defendant's] bag he felt what he suspected was a handgun. Thus he was entitled to search the bag for weapons.") (internal citation omitted), aff'd sub nom. United States v. Torres, 740 F.2d 122 (2d Cir. 1984); United States v. Morales, 549 F. Supp. 217, 223-24 (S.D.N.Y. 1982) (upholding a roadside search of a duffle bag where an agent felt a hard object inside and had reasonable suspicion to believe the bag contained a weapon); cf. United States v. U.S. Currency in

_____

is no concern after the individual has been taken into custody that he will be released and then access a nearby weapon. See Torres, 2011 WL 2209144, at *7 ("Because Gant dealt specifically with a protective search conducted incident to a custodial arrest, it does not address a protective search conducted during a traffic stop, in which the occupant of the vehicle may return to the car and have access to any weapons inside the vehicle once the stop is over.").

Amount of Five Hundred Ninety-Eight Thousand Eight Hundred Twenty Six Dollars, No. 00-CV-7073 (DLI)(VVP), 2007 WL 2713367, at *9 (E.D.N.Y. Sept. 13, 2007) ("In addition to searching the individual [during a frisk], the search may also extend to a bag from which the individual may readily grasp a weapon.").

In arguing that Officer Robinson did not have reasonable suspicion to search the plastic bags, Bulluck relies on United States v. McCraney, 674 F.3d 614 (6th Cir. 2012), in which the Sixth Circuit suppressed evidence of a firearm that had been discovered under the driver's seat of a car. In McCraney, a police officer stopped a vehicle for a traffic violation. Id. at 617. Unlike Bulluck, however, the two occupants of the vehicle immediately complied with the officers' instructions, which in that case were to "show their hands." Id. McCraney attempted to get out of the car twice but complied with the officer's instruction to get back into the car. Id. While a computer check was performed concerning the vehicle's registration, an officer observed the occupants "move as if bending down to reach under the seat." Id. After the occupants were unable to produce a valid driver's license, the officers removed the occupants from the vehicle and searched it, recovering a firearm under the driver's seat. Id. at 617-18.

The Sixth Circuit concluded that the officers did not have reasonable suspicion to believe the occupants were armed, noting that the officers had conceded that they would have let the occupants drive away if they had produced a valid driver's license. Id. at 617, 620-21. The court also found that "the fact that [the defendant] tried to get out of the Buick twice . . . d[id] not add to the suspicion that the occupants were armed[, because] [a]ccording to [the officer's] description, it was not an attempt to flee, but an attempt to get [the officer's] attention, and was not accompanied by otherwise

24

suspicious behavior." Id. at 621.  Accordingly, the Government had not offered

sufficient evidence of safety concerns to justify a search under Long.  Id.

The facts here are quite different.  Officers Robinson and Doyle

encountered a driver at midnight who was "very, very nervous."  Bulluck's furtive

movements were in direct response to the officers' approach.  There is also ample

evidence that Bulluck was attempting to hide the plastic bag from the police.  Bulluck

also repeatedly refused to obey Officer Robinson's instruction to exit the vehicle, and he

was noticeably angry once he finally got out of the vehicle.  Finally, Officer Robinson

testified that Bulluck's actions had caused Robinson to fear for his safety.  In sum, the

facts here provide a much stronger basis for a Long protective search than those present

in McCraney.

Because the search of Bulluck's plastic bags was conducted pursuant to a

valid "automobile frisk," he had no meritorious motion to suppress.

## CONCLUSION

For the reasons stated above, Bulluck was not prejudiced by his counsel's

failure to brief the issue of whether he had a reasonable expectation of privacy in the

plastic bags in which the crack cocaine was found.  Even if this issue had been briefed,

Bulluck's motion to suppress the drug evidence would have been denied.

Dated:  New York, New York
      August 20, 2015               SO ORDERED.

_____
Paul G. Gardephe
United States District Judge